# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| DON CULLEN and ELLEN ROSS, on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHUTTERFLY LIFETOUCH, LLC and SHUTTERFLY, LLC,<br><br>Defendants. | Case No. 20-cv-06040-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF CULLEN'S CLAIMS AGAINST DEFENDANT LIFETOUCH FOR LACK OF PERSONAL JURISDICTION; DENYING MOTION TO COMPEL ARBITRATION; AND GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 19, 20, and 21] |

In this putative class action, Plaintiffs Don Cullen ("Cullen") and Ellen Ross ("Ross") claim that Defendants' marketing of school pictures through their "Family Approval Program" violates numerous consumer protection laws. Defendants Shutterfly, LLC ("Shutterfly") and Shutterfly Lifetouch, LLC ("Lifetouch") have filed three motions: (1) a motion to dismiss Cullen's claims against Lifetouch for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); (2) a motion to compel arbitration; and (3) a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The motions are opposed by Plaintiffs.

For the reasons discussed below, the Court GRANTS the Rule 12(b)(2) motion to dismiss Cullen's claims against Lifetouch for lack of personal jurisdiction, DENIES the motion to compel arbitration, and GRANTS the Rule 12(b)(6) motion to dismiss for failure to state a claim, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

**I.    BACKGROUND**

Plaintiffs filed this action on August 27, 2020, alleging the following facts. Shutterfly is a Delaware limited liability company headquartered in California. Compl. ¶ 11, ECF 1. In 2018, Shutterfly acquired Lifetouch, a Minnesota limited liability company that is headquartered in Minnesota. *Id*. ¶ 10. "Lifetouch is a professional photography company that has been taking and selling school photographs for over 80 years." *Id*. ¶ 28.

Without distinguishing between Shutterfly and Lifetouch, Plaintiffs allege that "Defendants provide school picture services twice per year, in the fall and in the spring." Compl. ¶ 30. In the fall, parents may select a desired photo package before photos are taken, or may elect not to have their child's portrait taken. *Id*. ¶ 31. In the spring, pursuant to their Family Approval Program, Defendants take unsolicited school pictures and send them home with the children. *Id*. ¶¶ 32-33. "Parents are instructed to review the photographs and pay for any photos they choose to keep or return the photos to the school to presumably be destroyed within days." *Id*. ¶ 34. Parents are not given the opportunity to request that their child's picture not be taken or to opt out of receiving the spring photos. *Id*. ¶ 35. Parents "feel pressure to pay for these unsolicited photographs or return them to the school to an unknown fate." *Id.* ¶ 36. "Despite the unsolicited nature of the photographs, Defendants maintain that any photographs that are not returned must be paid for and send parents reminders for payment." *Id*. ¶ 37. Plaintiffs claim that "the purported right of Defendants to request payment for or return of the unsolicited photos is invalid and unenforceable under, inter alia, California law." Compl. ¶ 39. According to Plaintiffs, the unsolicited photo packages that are sent home are free gifts, and the recipients are not obligated to pay for them or return them. *Id*.

Cullen had a child in elementary school in Austin, Texas. Compl. ¶ 40. Beginning in April 2017, Defendants sent home unsolicited photographs of Cullen's child. *Id*. ¶ 41. Cullen

1 returned the photo packages, but he alleges that he would not have done so if Defendants had not
2 misrepresented that he had to pay for the photos or return them. *Id.* ¶ 43. Ross had four children
3 who attended school in Modesto, California. *Id.* ¶ 44. Beginning in 2001, Defendants sent home
4 unsolicited photos of Ross's children. *Id.* ¶ 45. Ross consistently purchased the Family Approval
5 Program packages for her children from 2001 until approximately 2019. *Id.* ¶ 47. Ross alleges
6 that she would not have paid for any of the unsolicited photo packages if Defendants had not
7 misrepresented that she had to pay for the photos or return them. *Id.* ¶ 48.

Plaintiffs claim that Defendants' conduct gives rise to the following claims: (1) unjust enrichment; (2) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) violation of California's false advertising law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) common law fraud, deceit, and/or misrepresentation; (5) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (6) violation of Cal. Civil Code § 1584.5; and (7) violation of the Postal Reorganization Act of 1970, 39 U.S.C. § 3009. Plaintiffs seek to litigate these claims on behalf of a nationwide class and several subclasses: a nationwide Class of individuals who received unsolicited Family Approval Program photo packages from Defendants between August 25, 2016 and the date of preliminary approval; a Purchaser Subclass of Class Members who purchased any Family Approval photo packages; a California Subclass of Class members who reside in the state of California; and a California Purchase Sub-Subclass of Purchaser Subclass Members who reside in the state of California. Compl. ¶ 49.

Defendants move to dismiss Cullen's claim against Lifetouch for lack of personal jurisdiction under Rule 12(b)(2), to compel arbitration of Plaintiffs' individual claims, and to dismiss the complaint for failure to state a claim under Rule 12(b)(6). The Court addresses those motions in turn, as follows.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571

U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id*. "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but the uncontroverted allegations in the complaint must be accepted as true. *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citation omitted). Factual disputes created by conflicting affidavits must be resolved in the plaintiff's favor. *Id*.

**B.     Discussion**

Defendants contend that Cullen cannot establish either general or specific personal jurisdiction over Lifetouch, a Minnesota company. General personal jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation marks and citation omitted). Specific personal jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 127-28. Defendants argue that Lifetouch does not have sufficient contacts with California to render it "at home" in California as required for exercise of general personal jurisdiction. Defendants also argue that Cullen's claims against Lifetouch do not arise from Lifetouch's contacts with California. Defendants point out that Cullen is a Texas resident, and that his claims arise from unsolicited Family Approval Program photos taken at his child's Texas elementary school and sent to his Texas home.

Cullen does not attempt to establish general personal jurisdiction over Lifetouch, but he

4

asserts that Lifetouch's contacts with California give rise to specific personal jurisdiction with respect to his claims. The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction over a non-resident defendant: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs. *Id*. "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id*. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*. (quotation marks and citation omitted).

### 1. **Purposeful Direction**

Under the first prong of the *Schwarzenegger* test, Cullen must show either purposeful availment or purposeful direction by Lifetouch. "[A] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (quotation marks and citation omitted). "By contrast, [a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. (quotation marks and citation omitted). "[A] purposeful availment analysis is most often used in suits sounding in contract, whereas a purposeful direction analysis is most often used in suits sounding in tort." *Id*. (quotation marks and citation omitted).

The Court applies a purposeful direction analysis, as Cullen's claims against Lifetouch sound in tort. Cullen argues that a purposeful availment analysis is appropriate, because " a contract is at issue – it is Defendants' unsolicited mailing that purported to create an obligation for

5

Plaintiff to perform that forms the basis of Plaintiffs' claims." Pls.' Opp. to Rule 12(b)(2) Mot. at 4, ECF 33. However, Cullen does not argue that he entered into a contract with Lifetouch. To the contrary, it appears on the fact of the complaint that Cullen did not order any photographs from Lifetouch from the Family Approval Program package, but rather returned all photographs to Lifetouch. *See* Compl. ¶¶ 41-43.

Cullen contends that when Lifetouch sent photos to him pursuant to the Family Approval Program, Lifetouch relied on its California-based parent company, Shutterfly, for storage and distribution of Lifetouch's digital photos. *See* Reynolds Decl. ¶¶ 3-4, ECF 33-1; Grant Decl. Exh. C, ECF 21-4. The order forms that Lifetouch sends home encourages parents to view and order digital photo packages. *See* Grant Decl. Exh. E, ECF 21-5. Cullen infers from these facts that when parents go online to view Lifetouch's digital photos, those photos are stored in Shutterfly's cloud. Cullen also speculates that Shutterfly may print the photos that Lifetouch sends home under its Family Approval Program. Cullen's inferences and speculation regarding Shutterfly's involvement in storing and printing the photos offered through Lifetouch's Family Approval Program are insufficient to establish contacts between Lifetouch and California. Moreover, even if the Court were to assume that Cullen's speculations are correct, he does not explain how Lifetouch's utilization of Shutterfly for storage and/or printing of photographs constitutes Lifetouch's purposeful direction of activities *toward* California.

The Court finds that Cullen has not satisfied the first prong of the *Schwarzenegger* test with respect to his claims against Lifetouch.

### 2. Arising Out Of

In determining whether a plaintiff's claim arises out of or relates to the defendant's forum-related activities, "the Ninth Circuit follows the 'but for' test." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quotation marks and citation omitted). Under this test, Cullen must show that he would not have suffered an injury "but for" Lifetouch's California-related conduct.

To the extent Cullen relies on the fact that Lifetouch's California-based parent, Shutterfly, fulfills digital orders for photos offered through the Family Approval Program, those contacts are unrelated to Cullen's claims. It is not alleged that Cullen ordered any digital photos through

Shutterfly. To the extent Cullen relies on speculation that Shutterfly may have printed the photo packages sent home to him, Plaintiffs have not made any factual allegations to support such speculation. Accordingly, the Court concludes that Cullen has not established that his claims arise out of Lifetouch's contacts with California.

The Court finds that Cullen has not satisfied the second prong of the *Schwarzenegger* test with respect to his claims against Lifetouch.

### 3. Reasonableness

Because Cullen has not satisfied his burden with respect to the first two prongs, the burden does not shift to Lifetouch to satisfy the third prong of the *Schwarzenegger* test.

### 4. Conclusion

Based on the foregoing, the Court concludes that Cullen has failed to make a *prima facie* showing of jurisdictional facts to withstand Lifetouch's motion to dismiss. This conclusion is consistent with this Court's ruling in *Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517170 (N.D. Cal. Sept. 14, 2020). In *Allen*, a Kansas resident filed a putative class action asserting consumer claims arising out of Lifetouch's Family Approval Program. This Court found that the Kansas plaintiff's claims against Minnesota-based Lifetouch did not give rise to personal jurisdiction in California. *See Allen*, 2020 WL 5517170, at *5.

Based on the foregoing, Defendants' Rule 12(b)(2) motion to dismiss Cullen's claims against Lifetouch for lack of personal jurisdiction is GRANTED.

### 5. Additional Arguments Re Personal Jurisdiction

The Court briefly addresses additional arguments raised by the parties. First, Lifetouch argues that Cullen cannot establish personal jurisdiction over it based on a "reverse agency" theory, citing *Iconlab, Inc. v. Bausch Health Companies, Inc.*, 828 F. App'x 363, 365 (9th Cir. 2020). In *Inconlab*, the Ninth Circuit rejected the plaintiff's attempt to establish personal jurisdiction over subsidiaries by attributing to them contacts of the principal, holding that "[e]ven assuming Iconlab's agency theory is still actionable, Iconlab employs a novel 'reverse-agency' theory with no legal support: attributing to the agents (foreign subsidiaries) the contacts of the principal (Bausch)." However, it is clear from Plaintiffs' opposition brief and from the

7

representations of Plaintiffs' counsel at the hearing that Cullen does not assert personal jurisdiction based on a reverse agency theory.

Second, Cullen argues that the Court may exercise pendent jurisdiction over his claims. "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). However, under the doctrine of pendent personal jurisdiction, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id*. "Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id*. at 1180-81. Plaintiffs point out that this case includes a federal claim under the Postal Reorganization Act, and they rely on *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 860 (N.D. Cal. 2018), in arguing that "courts in this district have regularly exercised pendent jurisdiction where claims have a common nucleus of fact, as they do here." Pls.' Opp to Rule 12(b)(2) Mot. at 8, ECF 33.

For the reasons discussed below in section IV, the sole federal claim in this case is subject to dismissal without leave to amend. Under these circumstances, this Court declines to exercise pendent personal jurisdiction over non-resident Cullen's claims against non-resident Lifetouch.

### 6. **Request for Jurisdictional Discovery**

In the event that the Court grants Defendants' Rule 12(b)(2) motion, Plaintiffs assert that "Discovery May Be Warranted." Pls.' Opp. to Rule 12(b)(2) Mot. at 4, ECF 33. Plaintiffs' argument on this point consists of a single sentence: "Plaintiff believes that discovery could demonstrate, among other things, that Lifetouch relies on Shutterfly in California to execute the Family Approval Program." *Id.* Plaintiffs have not explained what specific discovery they wish to take or how discovery could establish personal jurisdiction over Cullen's claims against Lifetouch. Accordingly, Plaintiffs' request for jurisdictional discovery is DENIED.

## III. MOTION TO COMPEL ARBITRATION

### A. Legal Standard

The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce. 9 U.S.C. §§ 1 et seq. When it applies, the FAA preempts state law rules that conflict with its provisions, as well as "state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-43 (2011). "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Although these gateway issues generally are for the court to decide, they "can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." *Brennan*, 796 F.3d at 1130. For example, the Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id*. "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*.

However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation marks and citation omitted). Whether the parties formed an agreement to arbitrate is resolved under "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As the parties seeking to compel arbitration, Defendants bear the burden of proving the

9

existence of an agreement to arbitrate by a preponderance of the evidence. *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

**B. Discussion**

Defendants move to compel arbitration as to the individual claims of Plaintiffs Cullen and Ross. Defendants rely on an arbitration clause contained in the 2020 terms of use ("TOU") located on Lifetouch's website. *See* Grant Decl. ¶ 11 & Exh. C, ECF 21-1. In opposition, Plaintiffs argue that they never visited Lifetouch's website, let alone agreed to binding arbitration. Plaintiffs also argue that even if there were an agreement to arbitrate, Lifetouch is precluded from enforcing such an agreement. The Court addresses the motion to compel arbitration first with respect to Cullen's claims and then with respect to Ross's claims.

**1. Cullen**

The analysis is straightforward as to Cullen. He never ordered any photographs from Lifetouch and therefore never entered into a contract with Lifetouch that could have incorporated Lifetouch's TOU containing the arbitration provision. Defendants do not contend that Cullen entered into a contractual relationship with them or visited Lifetouch's website. Instead, Defendants argue that Cullen is equitably estopped from contesting applicability of the arbitration provision because the complaint relies on the choice-of-law and forum selection provisions contained in the TOU. *See* Compl. ¶¶ 23-25, 56. Specifically, the complaint alleges that California law applies and that jurisdiction and venue are proper in Santa Clara County. *See id.* Cullen argues that the complaint's reliance on the choice-of-law and forum selection provisions does not render him subject to the arbitration provision contained in the TOU and that he is not equitably estopped from contesting applicability of the arbitration provision.

The Court finds that Cullen is not equitably estopped from contesting the arbitration provision merely because the complaint relies on choice of law and forum selection provisions in Lifetouch's TOU. In *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), the plaintiff, Nguyen, brought a putative class action against Barnes & Noble Inc. ("Barnes") after his online order at a discount price was cancelled. Barnes sought to compel arbitration based on an arbitration provision in its online terms of use, arguing among other things that Nguyen should be

10

equitably estopped from avoiding arbitration because he ratified the terms of use by relying on its choice of law provision in his complaint. *See Nguyen*, 763 F.3d at 1179. The district court rejected Barnes' argument, and Barnes appealed. *See id.* The Ninth Circuit likewise rejected Barnes' equitable estoppel argument, holding that although arbitration may be compelled when a non-signatory "'knowingly exploits' the benefits of the agreement and receives benefits flowing directly from the agreement," Nguyen was not the type of non-signatory contemplated by the rule. *Id*. "Equitable estoppel typically applies to third parties who benefit from an agreement made between two primary parties." *Id*. The Ninth Circuit noted that "Nguyen is not a third-party beneficiary to Barnes & Noble's Terms of Use, and whether he is a primary party to the Terms of Use lies at the heart of this dispute." *Id*. at 1180. The Ninth Circuit also concluded that reliance on the contract's New York choice-of-law provision, which was chosen unilaterally by Barnes, did not constitute a direct benefit to Nguyen sufficient to render the arbitration provision applicable under an equitable estoppel theory. *See id.*

In the present case, the Court likewise concludes that Cullen is not the type of non-signatory contemplated by the equitable estoppel rule, and that the complaint's reliance on choice-of-law and forum selection provisions chosen unilaterally by Lifetouch did not confer a direct benefit on Cullen sufficient to render the arbitration provision applicable to him under an equitable estoppel theory. Defendants' reliance on *Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020), is misplaced. In that case the plaintiff, Allen, made online purchases of photographs offered through Lifetouch's Family Approval Program, and thereby assented to Lifetouch's online terms of service. *See Allen*, 2020 WL 5517172, at \*7. Allen argued that even if she was bound by the terms of service, Shutterfly lacked standing to enforce the arbitration agreement contained therein because Shutterfly was not a party to the terms of service. *See id.* at \*8. The Court found that Allen was equitably estopped from asserting that argument because she had not distinguished between the defendants in her complaint, had referred to the terms of service as "Defendants' Terms of Service," and had expressly alleged in her complaint that a choice-of-law provision contained in the terms of service was binding on all defendants, including Shutterfly. *See id.* The Court determined that Allen could not

11

1 simultaneously argue that the terms of service applied to Shutterfly but that Shutterfly – as
2 opposed to Lifetouch – lacked standing to enforce them. *See id.* Because the circumstances of
3 *Allen* were factually distinct from the circumstances of the present case, the Court finds that *Allen*
4 is inapplicable and that *Nguyen* governs.

The motion to compel arbitration is DENIED as to Cullen.

### 2. Ross

Unlike Cullen, Ross purchased photographs from Lifetouch. The complaint alleges that she "consistently purchased the Family Approval Program packages for all of her children from 2001 until approximately 2019." Compl. ¶ 47. Because the putative class and subclasses are limited to those who received unsolicited Family Approval Program photo packages from August 25, 2016 onward, the Court focuses on that time frame in evaluating the motion to compel arbitration as to Ross. *See* Compl. ¶ 49. The complaint does not allege whether Ross purchased school pictures online or by means of paper order forms that were provided by Lifetouch. While Defendants presumably have that information, Defendants likewise have not clarified Ross's purchase method, arguing only that *if* she bought photographs online she assented to the TOU via a click-through agreement, and *if* she bought photographs by cash or check using paper order forms she assented to the TOU based on language in the paper materials. Because Defendants have the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence, the Court focuses on the more difficult showing for Defendants, whether Ross is bound if she purchased photographs using paper order forms.

Defendants present evidence that beginning in the spring of 2019, paper order forms sent home as part of the Family Approval Program provided that, "by completing and submitting this order form, you are agreeing to all of Lifetouch's terms and conditions located at www.lifetouch.com/terms-conditions and to our privacy policy located at www.lifetouch.com/privacy." Grant Decl. ¶¶ 14-15 & Ex. D, ECF 21-1. It appears that the ordering form, including this language, was printed on the envelope in which the Family Approval Program photos were sent home. *See id.* Defendants argue that the language on the envelope advising families that ordering photos binds them to Lifetouch's online TOU is sufficient to bind

Ross to the arbitration provision contained in the online TOU. Ross argues that the language on the envelope is insufficient to bind her to the arbitration provision in the online TOU.

As an initial matter, because Defendants' evidence shows that the language in question appeared on the envelopes only as of the spring of 2019, that language could not have created an arbitration agreement between Ross and Defendants with respect to the orders she placed between August 2016 and the spring of 2019. Accordingly, even if Defendants prevail on their argument based on the language on the envelope, Ross could be compelled to arbitrate only those claims arising out of her later purchases.

Even as to Ross's later purchases, Defendants have not cited a case directly on point, and they conceded as much at the hearing. Defendants argue that cases addressing click-through and browsewrap agreements are most analogous. Contract formation under those types of agreements are summarized in *Nguyen*: "Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76. "Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly . . . [a] party instead gives his assent simply by using the website." *Id*. at 1176 (quotation marks and citation omitted). "Indeed, in a pure – form browsewrap agreement, the website will contain a notice that – by merely using the services of, obtaining information from, or initiating applications within the website – the user is agreeing to and is bound by the site's terms of service." *Id*. (quotation marks and citation omitted).

The Court finds that contract formation under a browsewrap agreement is analogous to the alleged contract formation based on the language on the envelopes in this case. Just as a browsewrap agreement informs the user that he or she is bound by the site's terms of service, the envelopes sent home by Lifetouch after the spring of 2019 informed parents that they were bound by Lifetouch's internet terms of service. "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination

13

1 of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Nguyen*, 763 F.3d at 1176 (quotation marks and citation omitted). "[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id*. at 1177. Thus, applying the browsewrap cases by analogy, the Court must determine whether Defendants have demonstrated that a reasonably prudent person would have been in inquiry notice of the language on the envelope advising that ordering photos binds the individual to Lifetouch's online TOU.

As stated at the hearing, the undersigned has good vision and was hard-pressed to identify, let alone read, the language in question on the exhibit provided by Defendants. The subject language is in tiny print, that appears to be light gray in color, and there is no header or other indicator that would notify an individual of important contractual terms. *See* Grant Decl. ¶¶ 14-15 & Ex. D, ECF 21-1. It may be that the actual envelopes delivered to Ross were larger, but the Court is limited to evaluation of the evidence provided by Defendants. Defendants have the burden of proving by a preponderance of the evidence that an arbitration agreement was formed. *See Norcia*, 845 F.3d at 1283. The Court finds that Defendants have failed to meet that burden here.

In addition to their argument based on the paper envelopes, Defendants make the same equitable estoppel argument discussed above with respect to Cullen. The Court finds that argument unpersuasive for the same reasons.

The motion to compel arbitration is DENIED as to Ross.

**IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**A. Legal Standard**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

14

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Discussion

Defendants seek dismissal of all of Plaintiffs claims for failure to state a claim. As the Court indicated at the hearing, it is the Court's view that the complaint is in relatively good shape, with a few notable exceptions. The Court discussed its concerns regarding the complaint at the hearing, and therefore addresses the pleading defects at a high level, as follows.

#### 1. The Complaint Improperly Lumps Defendants Together

As Defendants point out, Plaintiffs make no attempt to distinguish between conduct of Shutterfly and the conduct of Lifetouch, but rather use the term "Defendants" throughout the complaint. This manner of pleading obfuscates what roles each Defendant played in the alleged harm. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018). "Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *Id.* (quotation marks and citation omitted). All claims in the complaint are subject to dismissal on this basis.

The motion to dismiss is GRANTED as to all claims on this basis.

#### 2. Claim 7 – Violation of the Postal Reorganization Act

Plaintiffs assert a single federal claim under the Postal Reorganization Act, which prohibits "the mailing of unordered merchandise." 39 U.S.C. § 3009(a). Defendants argue that Plaintiffs' claim is subject to dismissal because they have not alleged that the photo packages were mailed. In opposition, Plaintiffs argue that the Act does not require direct mailing, and that it extends to

15

the facts alleged here, where goods were shipped using "deputized child couriers." Plaintiffs have not cited any authority supporting their position.

The motion to dismiss is GRANTED as to Claim 7.

### 3. Claims of Non-California Residents

Defendants argue that Plaintiffs have not demonstrated that Cullen and any other non-resident class members may sue in California under California law. In opposition, Plaintiffs argue that this issue is not appropriate for disposition at this early stage of the case. The Court agrees. *See Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) (declining to dismiss claim for nationwide class under California law after concluding that a detailed choice-of-law analysis was not appropriate at early stage of litigation).

### 4. Claim 6 for Violation of California Civil Code § 1584.5

California Civil Code § 1584.5 prohibits the voluntary and unsolicited sending of goods for sale to a person. Cal. Civ. Code § 1584.5. Defendants argue that Claim 6, asserted under this statute, fails because the photo packages were not unsolicited as to Ross and because neither Plaintiff has standing to seek injunctive relief under the statute. Defendants also assert that the Family Approval Program has been discontinued, thus rendering any claim for injunctive relief moot. As Plaintiffs point out in opposition, it does not appear on the face of the complaint that Ross solicited the photo packages. Moreover, nothing in the complaint precludes Plaintiff from seeking injunctive relief. Defendants' assertion that the Family Approval Program has been discontinued goes beyond the scope of what the Court may consider on a Rule 12(b)(6) motion, and therefore does not provide a basis for dismissal of Claim 6.

### 5. Claims 2-5

Defendants contend that dismissal is warranted with respect to Claim 2 for violation of the CLRA, Claim 3 for violation of the FAL, Claim 4 for fraud, and Claim 5 for violation of the UCL. Defendants contend that the alleged misrepresentations and omissions underlying these claims have been alleged in only generic terms that are insufficient to meet the applicable pleading standards. The Court agrees that these claims are inadequately alleged because, as discussed above, the Court cannot discern from the pleading what allegedly fraudulent conduct is

16

attributable to each Defendant. "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation marks and citation omitted). Plaintiffs CLRA, FAL, and UCL claims must satisfy this pleading requirement because they are grounded in fraud. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) ("Because Davidson's common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the FAC must satisfy . . . the heightened pleading requirements of Rule 9(b).").

### 6. Equitable Relief

Finally, Defendants seek dismissal of all of Plaintiffs' claims for equitable relief on the basis that Plaintiffs have not alleged facts showing that legal remedies are inadequate. As the Court advised the parties at the hearing, the Court views that issue as premature and declines to dismiss the claims for equitable relief at this stage of the proceedings. Even if the Court otherwise were inclined to entertain the issue at the pleading stage based on *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) and other cases in which district courts have performed that analysis at the motion to dismiss stage, the Court would not do so at this time given that Plaintiffs must amend to make clear each Defendant's role in the alleged wrongdoing.

### 7. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id*. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id*.

The record does not reflect undue delay by Plaintiffs (factor 1) or bad faith (factor 2).

17

There has been no failure to cure deficiencies, as the present motion addresses Plaintiffs' original complaint (factor 3). The case is at an early stage, so amendment would not unduly prejudice Defendants (factor 4). Finally, while Plaintiffs have not given any indication that they could amend Claim 7, they may well be able to amend to cure the other deficiencies identified herein. Accordingly, leave to amend will be granted as to all claims except Claim 7.

### 8. Conclusion

All claims are DISMISSED WITH LEAVE TO AMEND except Claim 7 for violation of the Postal Reorganization Act, which is DISMISSED WITHOUT LEAVE TO AMEND.

## V. ORDER

(1) Defendants' Rule 12(b)(2) motion to dismiss Cullen's claims against Lifetouch is GRANTED;

(2) Defendants' motion to compel arbitration is DENIED;

(3) Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim is GRANTED WITH LEAVE TO AMEND as to all claims except Claim 7 for violation of the Postal Reorganization Act, as to which the motion is GRANTED WITHOUT LEAVE TO AMEND;

(4) Plaintiffs shall file any amended complaint on or before June 9, 2021; and

(5) This order terminates ECF 19, 20, and 21.

Dated: May 19, 2021

BETH LABSON FREEMAN
United States District Judge