UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELLEN ROSS, on behalf of herself, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHUTTERFLY LIFETOUCH, LLC and SHUTTERFLY, LLC,<br><br>Defendants. | Case No. 20-cv-06040-BLF<br><br>**ORDER GRANTING DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION; STAYING ACTION; AND ADMINISTRATIVELY CLOSING CASE**<br><br>[Re: ECF 76] |

This is a putative consumer class action arising out of the marketing of school pictures by Defendant Shutterfly, LLC ("Shutterfly") and its subsidiary, Defendant Shutterfly Lifetouch, LLC ("Lifetouch"). Plaintiff Ellen Ross ("Ross") claims that Defendants' practice of taking unsolicited photos of school children pursuant to their Family Approval Program, and sending those photos home with instructions for payment, violates California law.

Defendants responded to the initial complaint with several motions, including a motion to compel arbitration that was denied by the Court in a prior order. *See* Prior Order, ECF 58. Defendants have filed a renewed motion to compel arbitration or, in the alternative, for reconsideration of the Court's prior order denying arbitration. *See* Renewed Mot., ECF 76. For the reasons discussed below, the renewed motion to compel arbitration is GRANTED. The action is STAYED and ADMINISTRATIVELY CLOSED pending arbitration.

**I.   BACKGROUND**

Ross and another putative class representative, Don Cullen ("Cullen"), filed this action on August 27, 2020, asserting claims against Defendants arising out of their Family Approval

Program, through which Defendants provide school picture services to numerous schools. *See* Compl., ECF 1. Cullen has been dismissed from the action. *See* Prior Order, ECF 58. The operative FAC, brought by Ross on behalf of herself, the general public and those similarly situated, alleges the facts set forth below. *See generally* FAC, ECF 63.

Shutterfly is a Delaware limited liability company headquartered in California. FAC ¶ 10. In 2018, Shutterfly acquired Lifetouch, a Minnesota limited liability company that is headquartered in Minnesota. *Id*. ¶¶ 9, 11. "Lifetouch is a professional photography company that has been taking and selling school photographs for over 80 years." *Id*. ¶ 27. Lifetouch provides school picture services twice per year, in fall and spring, working with schools to hire photographers, take the photos, and deliver marketing materials to families via schoolchildren. *Id*. ¶ 32. Shutterfly oversees Lifetouch's activities and manages the digital sales, marketing, and manufacturing of the school photos. *Id*.

For fall photos, parents order photo packages before school pictures are taken, and parents have the option of choosing not to have pictures taken of their children. FAC ¶ 33. For spring photos, however, Defendants take unsolicited photos of school children pursuant to their Family Approval Program. *Id*. ¶¶ 34-35. The photos are sent home with instructions directing parents to pay for photos they keep and return all other photos to the school. *Id*. ¶ 36. Parents are not given an opportunity to opt out of having the photos taken and sent home. *Id*. ¶ 37. Parents feel pressure to pay for these unsolicited photos or to return them to the school. *Id*. ¶ 38.

Ross has four children who attended school in Modesto, California from 2001 to the present. FAC ¶ 47. During that period, she received unsolicited photos of her children from Defendants. *Id*. ¶¶ 48-49. Ross consistently purchased the Family Approval Program packages for all of her children from 2001 until approximately 2019. *Id*. ¶ 51. According to Ross, Defendants' conduct violated California law. She alleges that she "would not have paid for any of the unsolicited photo packages had Defendants not misrepresented her obligation to pay for or return the photos of her children." *Id*. ¶ 52.

Ross asserts claims for: (1) unjust enrichment; (2) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) violation of California's false

advertising law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) common law fraud, deceit, and/or misrepresentation; (5) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (6) violation of Cal. Civil Code § 1584.5. She seeks to litigate these claims on behalf of a nationwide class of persons who received unsolicited Family Approval Program photo packages from Defendants, as well as several subclasses. FAC ¶ 53.

Defendants move to compel individual arbitration of Ross's claims pursuant to an arbitration provision included in the Terms of Service ("TOS") that appear on Lifetouch's website. *See* Punke Decl. ¶ 9 & Exh. A at ¶ 16, ECF 76-3. The Court denied Defendants' prior motion to compel arbitration of Ross's claims based on Lifetouch's online TOS, finding that Defendants had failed to show either than Ross purchased school pictures online or that the paper order forms sent home from school gave adequate notice that ordering photos would bind her to Lifetouch's online TOS. *See* Prior Order at 12-14, ECF 58. Defendants now submit evidence that Ross purchased school pictures through Lifetouch's website on October 1, 2020 and April 21, 2021. *See* Punke Decl. ¶¶ 5-9. Based on that evidence, Defendants have filed the present renewed motion to compel arbitration pursuant to the arbitration provision in Lifetouch's online TOS or, in the alternative, for reconsideration of the order denying Defendants' prior motion to compel arbitration.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce. 9 U.S.C. §§ 1 et seq. When it applies, the FAA preempts state law rules that conflict with its provisions, as well as "state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-43 (2011). "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

1    Although these gateway issues generally are for the court to decide, they "can be expressly
2    delegated to the arbitrator where the parties clearly and unmistakably provide otherwise."
3    *Brennan*, 796 F.3d at 1130.  For example, the Supreme Court has "recognized that parties can
4    agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to
5    arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v.
6    Jackson*, 561 U.S. 63, 68-69 (2010).  "When the parties' contract delegates the arbitrability
7    question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer &
8    White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  "In those circumstances, a court possesses no power
9    to decide the arbitrability issue." *Id*.  "That is true even if the court thinks that the argument that
10   the arbitration agreement applies to a particular dispute is wholly groundless." *Id*.

11   However, "arbitration is a matter of contract and a party cannot be required to submit to
12   arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns
13   Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation marks and citation omitted).  Whether the
14   parties formed an agreement to arbitrate is resolved under "ordinary state-law principles that
15   govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944
16   (1995).  As the parties seeking to compel arbitration, Defendants bear the burden of proving the
17   existence of an agreement to arbitrate by a preponderance of the evidence.  *See Norcia v. Samsung
18   Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

19   **III.   DISCUSSION**

20   Defendants' prior motion to compel arbitration of Ross's claims was denied by this Court
21   on May 19, 2021.  *See* Prior Order, ECF 58.  In that order, the Court determined that Defendants
22   had not met their burden to show that Ross agreed to the arbitration provision included in
23   Lifetouch's online TOS, because Defendants had not submitted evidence that Ross purchased
24   school pictures online or that the paper order forms sent to the home were sufficient to put Ross on
25   notice that the online TOS applied.  *See id.* at 12-14.  Defendants now bring a renewed motion to
26   compel arbitration or, in the alternative, for reconsideration of the Court's prior order based on
27   evidence that Ross did purchase school pictures online.  In opposition to the motion, Ross
28   contends that Defendants cannot show the diligence necessary to warrant reconsideration of the

4

Court's prior order and that in any event Defendants' arguments fail on the merits.

As discussed below, the Court finds that Defendants have shown that reconsideration of the prior order is warranted and that their renewed motion to compel arbitration is meritorious.

### A. Reconsideration is Appropriate Based on Material Difference in Fact

In this district, reconsideration may be sought only if one of the following circumstances exists: (1) a material difference in fact or law from that presented to the Court prior to issuance of the order that is the subject of the motion for reconsideration; (2) new material facts or a change of law occurring after issuance of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before issuance of such order. *See* Civ. L.R. 7-9(b).

Defendants argue that there is a material difference in fact from that presented to the Court prior to issuance of its earlier order denying Defendants' first motion to compel arbitration. Defendants' first motion to compel arbitration was filed on October 22, 2020. *See* Prior Mot., ECF 21. At that time, Defendants were unable to locate any records showing that Ross had purchased photos online. *See* Punke Decl. ¶ 4, ECF 76-3. Defendants submit the declaration of counsel describing the efforts of the defense team to find such records. *See id*. At the hearing on the first motion to compel, Defendants' counsel pointed out that Ross's method of purchase was not identified in the complaint. *See* Hrg. Tr. 4:17-24, Chang Decl. Exh. 1, ECF 76-2. Both Defendants' counsel and the Court proceeded on the assumption that Ross had purchased school pictures using a paper order form. *See id*. 20:14-16; Prior Order at 12, ECF 58. The Court's prior order dated May 19, 2021 was based on that assumption. *See* Prior Order at 12-14.

Defendants subsequently discovered that Ross made two online purchases of school pictures using Lifetouch's website on October 1, 2020 and April 21, 2021. *See* Punke Decl. ¶¶ 5-9. The October 2020 purchase was made before Defendants filed their first motion to compel arbitration, and the April 2021 purchase was made after the hearing on Defendants' first motion to compel but before the Court issued its ruling. However, Defendants did not discover Ross's two online purchases until June 2021, when Ross's counsel provided Defendants' counsel with a set of proposed search terms identifying Ross's children by name for the first time. *See id.* ¶¶ 5-6. Ross

1  had not previously identified the names of the children for whom she purchases school pictures, in
2  the complaint or otherwise. *See id.* ¶ 4. The complaint alleged that Ross had purchased school
3  pictures only between 2001 and 2019. *See* Compl. ¶ 47. With the new information, Defendants
4  were able to identify the two online purchases of school pictures made by Ross on October 1,
5  2020 and April 21, 2021. *See id.* ¶ 6.

6  Ross's online purchases were made on Lifetouch's website, my.lifetouch.com. *See* Punke
7  Decl. ¶¶ 6-8. At that time Lifetouch's most recent TOS, dated July 15, 2020, were in effect. *See*
8  *id.* ¶ 9. Lifetouch's TOS contain an "Arbitration Agreement" that provides as follows: "If you are
9  a Shutterfly customer in the United States (including its possessions and territories), you and
10 Shutterfly agree that any dispute, claim or controversy arising out of or relating in any way to the
11 Shutterfly service, these Terms of Use and this Arbitration Agreement, shall be determined by
12 binding arbitration or in small claims court." TOS ¶ 16, Punke Decl. Exh. A, ECF 76-4. The TOS
13 go on to state that, "You agree that, by agreeing to these Terms of Use, the U.S. Federal
14 Arbitration Act governs the interpretation and enforcement of this provision, and that **you and**
15 **Shutterfly are each waiving the right to a trial by jury or to participate in a class action.**" *Id*.
16 Either Shutterfly or the customer may commence arbitration or file a claim in small claims court
17 after certain notice requirements are met. *See id.* Arbitration will be governed by the Consumer
18 Arbitration Rules of the American Arbitration Association ("AAA Rules") as modified by the
19 TOS. *See id.* The TOS state in all capital letters, "YOU AND SHUTTERFLY AGREE THAT
20 EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS
21 INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY
22 PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." *Id.*

23 This evidence is sufficient to show a material difference in fact from that presented to the
24 Court prior to its issuance of the order denying Defendants' first motion to compel arbitration.
25 The Court finds unpersuasive Ross's argument that Defendants' request for reconsideration on this
26 basis should be denied for lack of diligence. "A motion for reconsideration may not be used to
27 raise arguments or present evidence for the first time when they could reasonably have been raised
28 earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

873, 880 (9th Cir. 2009) (quotation marks and citation omitted); *see also* Civ. L.R. 7-9(b)(1) (A party seeking reconsideration based on facts materially different from those presented to the court "must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order."). Ross argues that had Defendants searched for records of purchases by "Ellen Ross" any time after October 1, 2020, they would have discovered her online purchases. Ross does not explain, however, what information would have put Defendants on notice that further searches in that time frame were necessary. As discussed above, the complaint alleged that Ross purchased school pictures from Defendants only between 2001 and 2019. Based on the allegations of the complaint and their records search performed in September 2020, Defendants reasonably believed that all of the purchases at issue were made with paper forms, as indicated by Defendants' counsel at the hearing. Upon receiving additional identifying information from Ross in June 2021, Defendants performed a further records search and unearthed Ross's online purchases. Defendants filed the present renewed motion to compel arbitration on July 8, 2021.

On this record, the Court finds that Defendants have shown that they could not reasonably have presented the online purchases before the Court issued its prior ruling. The Court's prior ruling turned on the assumption that Ross's purchases of school pictures were not made online. Now that Defendants have shown the existence of some online purchases, the Court finds it appropriate to reconsider its prior order and determine whether a different outcome results from consideration of those online purchases.

**B. Defendants' Renewed Motion to Compel Arbitration is Meritorious**

It is clear from this record that Ross made two online purchases of school pictures through Lifetouch's website, and that in so doing she agreed to the TOS containing the arbitration provision set for the above. Defendants present evidence that when Ross made her purchases, the following language appeared directly above the "Submit Payment" button on the Lifetouch website: "By clicking 'Submit Payment" I agree to the Privacy Statement and Terms and Conditions. I also confirm that I am the legal parent/guardian of the student(s) in this order or I have authorization from the legal parent/guardian to place this order." Punke Decl. ¶¶ 10-12.

7

Numerous courts, including this one, have found such evidence sufficient to establish the existence of an agreement to arbitrate. *See Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020) ("Courts in this Circuit routinely uphold the validity of internet contracts like Lifetouch's 2018 TOS.").

Ross does not dispute Defendants' evidence regarding her online photo purchases or the website language set forth above. Instead, she advances several reasons why the Court should not enforce the arbitration agreement in this case. First, she argues that the arbitration agreement is unconscionable and unenforceable because it was entered into outside the presence of her retained counsel. Second, she asserts that she did not consent to arbitrate her claims. Third, she asserts that the arbitration agreement is not enforceable because it resulted from an improper communication designed to prejudice the putative class. Fourth, she argues that this Court already has ruled that an arbitration provision applicable to a later photo purchase does not retroactively apply to an earlier photo purchase.

As Defendants point out in their reply brief, the arbitration provision in the TOS delegates most of these issues the arbitrator for decision. "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein*, 139 S. Ct. at 529 (quotation marks and citation omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Id*. "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id*. "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*. In the present case, the arbitration provision in the TOS clearly and unmistakably delegates the arbitrability question to the arbitrator to the extent it turns on the scope and enforceability of the arbitration agreement. The arbitration provision states expressly that "[a]ll issues are for the arbitrator to decide, *including issues relating to the scope and enforceability of this arbitration agreement*." TOS ¶ 16 (emphasis added), Punke Decl. Exh. A, ECF 76-4. For the reasons discussed below, Ross's challenges to the scope and enforceability of the arbitration agreement, including her challenges based upon asserted

8

1    unconscionability, fall within this clear and unmistakable delegation to the arbitrator.

2          Before turning to Ross's specific challenges, the Court addresses Ross's apparent

3    assumption that the Court must decide whether the arbitration agreement is unconscionable rather

4    than leaving that issue for the arbitrator. The Supreme Court addressed this precise issue in *Rent-*

5    *A-Ctr*, a case in which an employer moved to compel arbitration of a former employee's

6    discrimination lawsuit. The former employee opposed the motion to compel on the ground that

7    the arbitration agreement was unenforceable because it was unconscionable under state law. The

8    Supreme Court held that the district court properly granted the motion to compel arbitration based

9    on a delegation provision that gave the arbitrator "exclusive authority to resolve any dispute

10   relating to the . . . enforceability . . . of this Agreement." *Rent-A-Ctr.*, 561 U.S. at 72. In the

11   Supreme Court's view, that delegation encompassed the former employee's claim that the

12   arbitration agreement was unconscionable. *See id.* at 71-72. The Supreme Court stated that absent

13   a challenge to the delegation provision specifically, as distinct from a challenge to the arbitration

14   agreement as a whole, the delegation provision had to be be treated as valid. *See id.* at 72.

15   ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as

16   valid, . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

17         In the present case, Ross challenges the arbitration agreement as a whole on the ground of

18   unconscionability, but she has not challenged the delegation provision specifically. This case

19   therefore is factually distinguishable from *Norris v. Aon PLC*, No. 21-CV-00932-CRB, 2021 WL

20   1238303, at *6 (N.D. Cal. Apr. 2, 2021), in which the district court took up the plaintiffs'

21   unconscionability challenge that was directed specifically to the delegation provision. Because

22   Ross, like the former employee in *Rent-A-Ctr.*, has not challenged the delegation provision

23   specifically, this Court must treat the delegation provision as valid.

24         Ross's first argument listed above, asserting that the arbitration agreement is

25   unconscionable and unenforceable under the *Salgado* decisions issued by the California Court of

26   Appeal,[1] clearly falls within the delegation provision giving the arbitrator authority "to decide . . .

---

[1] *Salgado v. Carrows Rests.* ("*Salgado I*"), 33 Cal. App. 5th 356 (2019); *Salgado v. Food Mgmt. Partner.* ("*Salgado II*"), No. 56-2016-00489342 (Ventura Cty. Sup. Ct. Feb. 26, 2020);

9

issues relating to the . . . enforceability of this arbitration agreement." TOS ¶ 16. *See Rent-A-Ctr.*, 561 U.S. at 72 (holding that challenge to arbitration agreement as unconscionable fell within delegation provision giving the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement"). While this Court engaged in a robust colloquy with counsel regarding the applicability of the *Salgado* cases, this Court has no power to decide that issue here because that power resides exclusively with the arbitrator. Ross's third argument, challenging enforceability of the arbitration provision on the ground that it resulted from an improper communication designed to prejudice the putative class, likewise falls within the delegation of authority to the arbitrator.

Her second argument, that she did not consent to arbitration, properly is presented to this Court, since the question of whether the parties agreed to arbitrate is not expressly delegated to the arbitrator. As discussed above, Defendants have presented evidence showing that Ross entered into an agreement to arbitrate when she clicked on the "Submit Payment" button on Lifetouch's website. Ross asks the Court to find that agreement to be invalid because it would be "absurd" to find that Ross knowingly entered into such an agreement in the midst of this litigation. Ross has not cited any authority that would allow the Court to disregard her agreement to Lifetouch's TOS, including the arbitration provision, based on its asserted inconsistency with her litigation position.

Ross's fourth argument, asserting that this Court has precluded retroactive application of the arbitration provision, is delegated to the arbitrator to the extent Ross is attempting to litigate the proper scope of the arbitration agreement. To the extent Ross is trying to make an argument based on the doctrine of law of the case, such argument is misplaced. Under the law of the case doctrine, a district court generally is precluded from reconsidering an issue that has been decided by the district court or a higher court in the same case. *See Rebel Oil Co. v. Atl. Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998). The doctrine does not apply to dicta, however. *See id.* Ross points to language in the Court's prior order opining that even if paper forms sent home starting in 2019 contained language sufficient to create an arbitration agreement, such an agreement would

---

*Salgado v. Carrows Restaurants, Inc.* ("*Salgado III*"), No. 2D CIV. B304799, 2021 WL 2199436, at *1 (Cal. Ct. App. June 1, 2021).

10

not apply to Ross's earlier purchases using forms that did not contain such language. *See* Prior Order at 13, ECF 58. That language was unnecessary to the Court's denial of Defendants' first motion to arbitrate, which was based on the Court's finding that *none* of the paper forms created an arbitration agreement. *See id.* at 13-14. Accordingly, while the cited language arguably supports Ross's position, it does not constitute law of the case, nor was it intended to constitute a legal determination that arbitration provisions may not apply retroactively.

In summary, the Court finds that Defendants have met their burden to prove the existence of an arbitration agreement by a preponderance of the evidence. The Court also finds that Ross's challenges to the enforceability and scope of the arbitration agreement have been delegated to the arbitrator. Accordingly, Defendants' renewed motion to compel arbitration is GRANTED.

In light of the Court's order compelling arbitration, Defendants' pending motion to dismiss is TERMINATED. This terminations without prejudice to renewal of the motion should the arbitrator determine that the arbitration agreement is unenforceable or does not encompass Ross's claims.

The litigation is STAYED pending arbitration. The Clerk SHALL administratively close the case. This is an internal procedure that does not affect the substantive rights of the parties. The parties may request that the case be reopened, if appropriate, upon the completion of arbitration proceedings. Upon the completion of arbitration proceedings, the parties shall file a joint status update advising the Court whether any party will seek to reopen the case.

## IV. ORDER

(1) Defendants' renewed motion to compel arbitration (ECF 76) is GRANTED.

(2) Defendants' pending motion to dismiss (ECF 68) is TERMINATED.

(3) This litigation is STAYED pending arbitration.

(4) The Clerk SHALL administratively close the case.

(5) The parties SHALL file a joint status update upon the completion of arbitration proceedings, advising the Court whether any party will seek to reopen the case.

Dated: October 13, 2021

BETH LABSON FREEMAN
United States District Judge